UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHERINE HALL,

                Plaintiff,

                                                                                  AMENDED
                                                                             DECISION AND ORDER

                                                                             08-CV-6033L

             v.

PARKER HANNIFAN CORPORATION,

                Defendant.
_____

      Plaintiff, Katherine Hall, brought this action against her former employer, Parker HANNIFAN Corporation ("Parker"), alleging several claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York Human Rights Law ("HRL"), N.Y. Exec. L. § 290 *et seq.* Parker has moved for summary judgment, as well as to exclude certain portions of plaintiff's affidavit on the ground that they are inadmissible or are contradicted by her deposition testimony.

**BACKGROUND**

      Hall began working for Parker in 1968. She left, and was rehired, twice, and was most recently rehired in 1978. Hall Depo. (Dkt. #11 Ex. 1) at 12-15. Those prior departures and rehirings are not at issue in this lawsuit.

In 2002, Hall successfully bid on an opening for an analyst position within Parker's quality control department. She remained in that job until her retirement in June 2007. *Id.* at 17, 23.

When Hall first became a quality control analyst, there were a total of three employees in that position: herself, Ken Simmons, and Mike Milliman. *Id.* at 66. At some point, Milliman was promoted to an engineering position, and was not replaced, leaving Hall and Simmons as the only two quality control analysts. *Id.*

After becoming a quality control analyst, Hall complained on several occasions to her supervisors about what she perceived to be the unequal and inequitable distribution of work between her and Simmons. She alleges, in short, that although her supervisors promised to address her complaints, essentially nothing was done about the uneven workload. Plaintiff also alleges that she was "scolded" and "isolated" by Simmons and her supervisor, Brian DesCamp.

On April 23, 2007, Hall made an appointment with Parker's Human Resource Manager Kelly Bean to discuss early retirement. Plaintiff's Response to Defendant's Statement of Material Facts (Dkt. #17-6) ¶ 87. At their meeting the following day, Hall told Bean that she could not take the pressure anymore because of her work load and that she wanted to retire. *Id.* ¶ 88. Within less than an hour after that meeting, Hall sent an email to several managers and supervisors informing them that she planned to retire effective June 1, 2007. *Id.* ¶ 89.

Hall's last day of work at Parker was April 25, 2007. *Id.* ¶ 94. She then used her accumulated vacation leave for the period from then through the end of May 2007, and she did begin her retirement at the beginning of June. *Id.* ¶¶ 89-91, Dkt. #11-25.

On June 15, 2007, Hall filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to discrimination on the basis of her sex, and unlawful retaliation under Title VII. Dkt. #17-6 ¶ 103. She alleged that these unlawful acts were "all perpetrated by [her] male supervisor," *i.e.*, DesCamp. Dkt. #11-26 at 1. Hall later amended her EEOC charge to allege that she had been discriminated against by her "male manager and co-worker," apparently referring to DesCamp and Simmons. Dkt. #11-27 at 2. The EEOC issued a Dismissal and Notice of Suit Rights on October 22, 2007. Dkt. #11-28.

Plaintiff commenced this action on January 22, 2008. The complaint asserts four causes of action: (1) sex discrimination based on a hostile work environment under Title VII; (2) sexual harassment under the HRL; (3) unlawful retaliation under Title VII; and (4) unlawful retaliation under the HRL. In response to defendant's motion for summary judgment, however, plaintiff states that she "concedes" her discrimination and harassment claims, and that she "does not contend against defendant's motion for summary judgment based upon these claims." Plaintiff's Mem. of Law (Dkt. #17-9) at 4. Accordingly, the only claims now before me are plaintiff's retaliation claims.

## DISCUSSION

### I. Retaliation Claims–General Principles

"[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). Such claims are analyzed using a burden-shifting framework similar to that applied to

disparate-treatment discrimination cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

First, the plaintiff must establish a *prima facie* case of unlawful retaliation, by showing "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001).

If the plaintiff establishes a *prima facie* case, a rebuttable presumption of retaliation arises, and the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). If the employer does so, the presumption of retaliation is rebutted, and the burden shifts back to the plaintiff to "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) (quoting *Cifra v. General Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *accord Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 179 (2d Cir. 2005).

**II. Application to this Case**

Applying these principles here, I conclude that Parker is entitled to summary judgment. Plaintiff cannot even establish her *prima facie* case, much less demonstrate any factual issues regarding pretext.

Parker does not appear to dispute that plaintiff did engage in protected activity, and at least for purposes of defendant's motion the Court will assume that plaintiff has met that prong of her

*prima facie* case. It does appear, for instance, that in February 2007, Hall complained in an email to her plant manager, Joe Pimm, that she "fe[lt] that [she was] being discriminated against," although she did not expressly state what she believed to be the motive behind that discrimination. Dkt. #11-10.

What Hall has not demonstrated, or even alleged, however, is any adverse employment action following her complaints. In fact, she alleges precisely the opposite: that Parker essentially *did nothing* in response to her complaints.

As another district court from within this circuit has recently explained,

> [u]nlike the test for a discriminatory adverse employment action, a material adverse employment action in the retaliation context need not "affect employment or alter the conditions of the workplace." Instead, a plaintiff need only demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." To meet this standard, a plaintiff must allege a "significant" rather than a "trivial" harm, which would be "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."

*Gelin v. Geithner*, No. 06-CV-10176, 2009 WL 804144, at *20 (S.D.N.Y. Mar. 26, 2009) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-68 (2006) (additional internal quotation marks omitted).

Here, nothing of that nature occurred. Hall's employment at Parker did, of course, terminate at some point, but that is because she decided to retire. Plaintiff's contention that she suffered an adverse action because she "constructively discharged herself," Dkt. #17-9 at 18, makes no sense in the context of a retaliation claim, and finds no support in the case law, particularly since, as explained in more detail below, plaintiff alleges that *nothing changed* in the wake of her complaints. Plaintiff is not pursuing an independent constructive discharge claim, and in the absence of some

other action by Parker following plaintiff's protected conduct, it simply defies logic to think that *Parker* could be deemed to have taken some adverse action against Hall based solely on *plaintiff's* decision to retire.[1] *See Evans v. Davie Truckers, Inc.*, 769 F.2d 1012, 1014 (4th Cir. 1985) (Title VII retaliation claim requires adverse employment action, which does not obtain where plaintiff voluntarily resigns); *Chuang v. T.W. Wang Inc.*, ___ F.Supp.2d ___, 2009 WL 116906, at *7 (E.D.N.Y. 2009) (employer's proffered reason for termination of plaintiff's employment–his own voluntary resignation–was legitimate and nondiscriminatory, and no reasonable trier of fact could conclude that discrimination was the real reason for plaintiff's termination); *cf. Baker v. Echostar Communications Corp.*, No. 06-cv-01103, 2007 WL 4287494, at *9 (D.Colo. Dec. 4, 2007) (denying employer's motion for summary judgment where plaintiff alleged that defendant retaliated against her by making her working conditions *worse*, to the point that they became intolerable, thus forcing her to resign, after she complained about discrimination).

For similar reasons, plaintiff cannot show that any actions that were taken against her following her protected activity were motivated by that activity. Even if plaintiff found her working conditions to be unbearable, there is no indication that they got any worse after her complaints.

---

[1] Plaintiff's third and fourth causes of action, which are brought under Title VII and the HRL respectively, do allege that Hall was constructively discharged, but they are both captioned and presented solely as retaliation claims. Dkt. #1 at 8-9. To the extent that the complaint could be read as asserting an independent constructive discharge claim, the evidence before me is insufficient "to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Hoover v. County of Broome*, 2009 WL 2382376, at *2 (2d Cir. Aug. 3, 2009) (quoting *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993)); *see also DeSalvo v. Volhard*, 312 Fed.Appx. 394, 397 (2d Cir. 2009) ("DeSalvo's dissatisfaction with work assignments and the episodes when co-workers shouted at her do not support her constructive discharge theory").

The complaint itself alleges that after plaintiff "complained ... to management" about alleged harassment by her supervisor, "[n]o remedial action was taken." Dkt. #1 ¶¶ 15, 16, 19. In her Local Rule 56.1 Statement of Material Facts not in Dispute (Dkt. #17), plaintiff similarly states that in January 2007, she complained to Pimm that she "felt she was being discriminated against," and that he "told Plaintiff he would get back to her but he never did." *Id.* ¶ 108. She likewise states that at one point she attended a meeting with Pimm, Manager Suzanne Mitchell, and plaintiff's supervisor Brian DesCamp, at which various matters were discussed concerning plaintiff's complaints, and although "it was indicated that Supervisor Des Camp and Manager Mitchell were to follow up, however they never did." *Id.* ¶ 126.[2]

Plaintiff testified that in the aftermath of that meeting, "[n]othing changed. Everything went back to the way it was." Dkt. #11-3 at 121. She also alleges that following the meeting, she became further dissatisfied because her "work load had not changed," and "no results were forthcoming from her complaint." Dkt. #17 ¶¶ 145, 146. She therefore began to look into the possibility of early

---

[2]Hall similarly testified at her deposition that in January 2007, she complained to Pimm that she "believed [she] was being discriminated against," and that Pimm "said, 'I'll get back to you,' and he didn't." Dkt. #11-3 at 63. Plaintiff testified that this was the first time she complained to anyone in management about being mistreated. *Id.*

I note that despite plaintiff's assertion that Pimm never followed through on his promise to get back to her, Hall testified that her February 15, 2007 meeting with Pimm, Mitchell and DesCamp was a follow-up to that prior discussion between plaintiff and Pimm. The record also shows that Hall stated in an email to Pimm dated February 15, 2007 at 5:41 a.m. that "things are a little better since your talk with Brian [DesCamp]." She indicated that there were still a number of "other things that ma[d]e her feel that [she was] being discriminated against," at least some of which were apparently discussed at the meeting later that morning. It does appear, then, that Pimm did take some action in response to Hall's complaints to him in January, albeit not entirely to plaintiff's satisfaction. This evidence, though, certainly does not suggest that things got *worse* for plaintiff as a result of her complaints.

retirement because of "the failure of defendant to act regarding her complaints ... ." *Id.* ¶ 147. She alleges that she ultimately opted to retire because "she had asked for her complaints to be remedied, but nothing was getting better and she could not handle it anymore." *Id.* ¶ 154.

As stated, then, the gist of plaintiff's claim is that although she may have been paid some lip service in response to her complaints, in reality no action was taken in response to those complaints, and nothing changed. She ultimately decided to retire, she alleges, not because things got worse after she complained, but because things did not get any better, and she finally decided that she had had enough.[3]

---

[3]The complaint also alleges that Parker "had no policies in place ... to combat harassment in the workplace, ... had no complaint mechanisms in place regarding how to report claims of discrimination ..., [and] has never provided any training regarding discrimination in the workplace to its employees." Dkt. #1 ¶¶ 12-14.

When confronted at her deposition with evidence that Parker did have written policies concerning unlawful discrimination, including evidence that Hall herself had received Parker's employee handbook setting forth those policies, and that she, along with other Parker employees, had been given training with respect to preventing sexual harassment, plaintiff conceded that those allegations were "[a]pparently not" true. Dkt. #11-3 at 52-62. In her response to Parker's motion for summary judgment, plaintiff also states that "her complaint may have had some factual inaccuracies with regards to policies and procedures ... ." Dkt. #17-9 at 3.

To characterize as "factual inaccuracies" the allegations that Parker had *no* policies, and had *never* provided any training regarding discrimination, when in fact the plaintiff herself had been given such training, and had received written copies of those policies, is something of an understatement. At worst, those false allegations imply a disturbingly cavalier attitude on the part of plaintiff and her attorney to both of their obligations when presenting to the Court a signed paper containing allegations of unlawful behavior on the part of the defendant.

The Court could not help noticing that the complaint also alleges that "Plaintiff is an individual *male* ...," and that "Plaintiff's Supervisor did not subject any other similarly situated *females* in the same fashion." Dkt. #1 ¶¶ 6, 11 (emphases added). Such misstatements reinforce the impression that many of the allegations in the complaint are merely boilerplate language that has been "cut and pasted" from other pleadings involving completely different parties and

(continued...)

Courts have held that "if the alleged retaliatory behavior pre-existed the protected activity, the plaintiff must provide some evidence of ratcheting up or increased harassment to succeed." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007). *See also Walcott v. City of Cleveland*, 123 Fed.Appx. 171, 179 (6th Cir.2005) (affirming district court's grant of summary judgment on plaintiff's retaliation claim "because [plaintiff] cannot demonstrate that she was treated differently before and after filing the EEOC charges") (unreported case) (cited with approval in *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007)). Where there is no intensification of the alleged discriminatory behavior, courts sometimes identify the defect in the plaintiff's case as the absence of an adverse employment action, in the sense that if the employee's work environment remained unchanged, no materially adverse change can be said to have occurred. Other cases describe the problem as the failure to establish a causal connection between the employee's protected activity and whatever adverse acts occurred after that activity; if the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior.

However one frames the issue, what is clear is that some increase in the discrimination or harassment–either a "ratcheting up" of the preexisting behavior, or new, additional forms of harassment–must occur for the employee to make out a viable retaliation claim. *See*, *e.g.*, *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006) ("The adverse employment action requirement

---

[3](...continued)
proceedings, without regard to whether they have any relevance to the case at bar or whether they are even true.

may be satisfied by showing the *creation* of a hostile work environment or the *intensification* of a pre-existing hostile environment") (emphases added).

In *Gregory v. Daly*, 243 F.3d 687, 690 (2d Cir. 2001), for example, the Second Circuit held that the plaintiff had adequately stated a retaliation claim based on her allegation that her supervisor's conduct significantly worsened after she complained about his sexual harassment and filed a lawsuit against him in state court.[4] In contrast, the Seventh Circuit in *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 704-05 (7th Cir. 2001), held that the plaintiff had failed to establish a causal link between her protected activity and her supervisor's conduct where the supervisor "treated Stutler just as poorly before Stutler [engaged in protected activity] as she did afterward." *See also Malozienc v. Pacific Rail Services*, 606 F.Supp.2d 837, 872 (N.D.Ill. 2009) ("Plaintiff fails to provide sufficient evidence that this claim rises to the level of an adverse employment action. To the contrary, the evidence and timeline of events shows Plaintiff was treated the same before and after he filed his charge"); *Cloer v. United Food & Commercial Workers Intern. Union*, No. C05-1526, 2007 WL 601426, at *11 (W.D.Wash. Feb. 22, 2007) (employer's failure to remedy plaintiff's grievance did not provide sufficient evidentiary basis from which a reasonable juror could find an adverse employment action).

---

[4]For example, the *Gregory* plaintiff's supervisor allegedly "made hostile comments concerning the lawsuit Gregory had filed, started to threaten her job, and subjected her to baseless disciplinary actions." He also "took steps to undermine [the plaintiff's] supervisory authority, withheld information necessary to her work, and prevented her participation in important training sessions that other staff members attended. Throughout, [he also] belittled Gregory, yelled at her, called her stupid, and made vulgar, sexually explicit comments to her." 243 F.3d at 690.

About the only thing that Hall does allege in that vein is that after she complained about the unequal work distribution between her and Simmons, "her work load increased in that she" was given certain additional duties. Dkt. #17 ¶ 135. In that regard, Hall stated in her EEOC charge that "despite [Hall's] complaints to management about [her] male coworker and supervisor's conduct, as late as February 15, 2007, ... [she] ha[d] been met with retaliation that has culminated in [her] compelled retirement on June 6, 2007." Dkt. #11-27.[5] Asked about that statement at her deposition, Hall testified that after February 15, she "was given even more work. [She] began calibrating the bleeds, and [she] was scolded and isolated." Dkt. #11-3 at 163.

Hall also testified, however, that in certain other respects she had *less* work after February 15. She stated that things were "[s]omewhat improved" because the number of "returned goods" (*i.e.*, good returned for one reason or another by Parker's customers, which accounted for part of Hall's workload) had gone down, and she "developed enough time to start doing some testing again that [she] had been too busy to do before." *Id.* at 68. She acknowledged that "some work that [she] had expected to have did not materialize ... ." *Id.* at 164.

Plaintiff also testified that on those occasions when she followed DesCamp's suggestion that she ask for more help when she needed it, he did provide her with help. *Id.* at 68-69. That was apparently not the solution that plaintiff had been looking for, however; she testified that what she really wanted was for "some of the work [to] be assigned to Ken [Simmons so that Hall] wouldn't have to be degraded to ask for help." *Id.* at 122.

---

[5]The reference to February 15, 2007 was apparently to the meeting that took place on that date between Hall, DesCamp, Mitchell, and Pimm, at which Hall's various complaints were discussed. *See* Minutes of Meeting (Dkt. #11-11).

Somewhat paradoxically, plaintiff further testified that she felt "isolated" after her complaints concerning her work load because "Joe Pimm didn't interrupt [her]. *He didn't give [her] any extra assignment to do* or anything." Dkt. #11-3 at 110 (emphasis added). When plaintiff asked him why, Pimm allegedly responded that he wanted to "[g]ive [Hall] time to do [her] work." *Id.*

If in fact Hall's workload did increase, then, her own testimony establishes that it was a minimal increase at most. Although there might be circumstances in which an employee's workload is boosted to the point that it becomes onerous enough to dissuade a reasonable employee from complaining about discrimination, the modest increase that occurred here–if there even *was* an overall increase–certainly did rise to that level. *See Burlington Northern*, 548 U.S. at 68 (observing that "it is important to separate significant from trivial harms"); *Stewart v. Mississippi Transp. Comm'n*, ___ F.3d ___, 2009 WL 3366930, at *8 (5th Cir. 2009) (plaintiff's "reassignment, although imposing more work, carried greater responsibility and would not dissuade a reasonable employee from charging discrimination"); *Pacheco v. New York Presbyterian Hosp.*, 593 F.Supp.2d 599, 628 (S.D.N.Y. 2009) ("Plaintiff's claim that he was retaliated against by receiving an assignment that would normally take two and a half hours only fifteen minutes before he was due to leave for the day was a minor and isolated event and does not constitute an act that would reasonably likely deter a person from engaging in a protected activity").

As stated, then, plaintiff has failed even to make out a *prima facie* case of retaliation. It is therefore unnecessary for the Court to follow the entire burden-shifting analysis under *McDonnell Douglas*. *See Gutzwiller v. City of Chicago*, No. 03 C 7598, 2007 WL 294255, at *5 (N.D.Ill. Jan. 25, 2007); *Brazenec v. Easton Hosp.*, No. CIV. A. 05-4415, 2006 WL 3386670, at *5 (E.D.Pa. Nov.

20, 2006). Even if the Court were to engage in that analysis, however, plaintiff would plainly be unable to demonstrate pretext, for the reasons already stated with respect to her *prima facie* case.

**CONCLUSION**

Defendant's motion for summary judgment (Dkt. #12) is granted, and the complaint is dismissed. Defendant's motion to exclude portions of plaintiff's affidavit (Dkt. #18) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 30, 2009.